## Case No. 11,424.

### The PRINCE.

[See Case No. 12,219.]

---

PRINCE (GOLDEN v.).    See Case No. 5,509.

PRINCE (HOWARD v.).    See Case No. 6,762.

PRINCE (POLYDORE v.).    See Case No. 11,-257

PRINCE (SABBICH v.).    See Case No. 12,-192.

---

## Case No. 11,425.

### PRINCE v. UNITED STATES.

[2 Gall. 204.] [1]

Circuit Court, D. Massachusetts.    Oct. Term, 1814.

CUSTOMS DUTIES — RELEASE ON GOODS CAPTURED BY ARMED VESSELS—ACT OF AUG. 2, 1813 —RETROACTIVE EFFECT.

1. The act of 2d Aug., 1813, c. 48 [2 Story, Laws, 1374; 3 Stat. 75, c. 49]. releasing one third of the duties accruing on goods captured and brought into the United States by any private armed vessel of the United States, did not apply to the case of a vessel captured and brought in before the passing of the act, but not condemned until after it had passed.

[Cited in The Gertrude, Case No. 5,370; U. S. v. Starr, Id. 16,379.]

[Cited in Rich v. Flanders, 39 N. H. 367; Thompson v. Alexander, 11 Ill. 55.]

2. Duties accrue as soon as the goods are voluntarily imported, and this as well as to prize goods, as any other; for the condemnation relates back to the time of importation.

[Cited in U. S. v. Lyman, Case No. 15,647; U. S. v. Dodge, Id. 14,973; U. S. v. Boyd, 24 Fed. 694; McAndrew v. Robertson, 29 Fed. 246.]

[In error to the district court of the United States for the district of Massachusetts.]

This was a writ of error to the district court of Massachusetts, in an action of debt brought by the United States against the plaintiff in error, on a revenue bond for the duties payable on a certain prize cargo imported into the United States. It appeared from the pleadings, that the prize ship and cargo were captured by the private armed schooner Favorite on the 20th of June, 1813, and arrived in the port of Plymouth, where the entry was made, on the 21st day of July of the same year. A prize allegation was filed on the 10th day of the ensuing August, and the vessel and cargo finally condemned in the district court on the 5th of the succeeding month. By the act of congress of 2d of August, 1813 (chapter 48), it is provided, that on all goods, &c. captured from the enemy, and made good and lawful prize of war, by any private armed commissioned ship of the United States, and brought into the United States or their territories, there

---

1 [Reported by John Gallison, Esq.]

shall be allowed a deduction of 33⅓ per cent. on the amount of duties then imposed by law. The plea, after oyer of the bond and condition, and setting forth the facts above stated, averred, that the defendant, now plaintiff in error, had tendered the amount of duties, deducting one third.

Mr. Prescott and J. T. Austin, for plaintiff in error.

1. Did the statute apply immediately to all goods then within the country, or only to those which should arrive after its passage? The statute is to receive a liberal construction. The court will look at the mischief intended to be remedied, and if possible understand the language of the law in a sense sufficiently broad to meet that mischief. Now the evil complained of was, that the duties were so high, as to discourage privateers, and it was, therefore, thought useful to remit in their favor a part of those duties. This evil was not less felt by those, who were then proceeding in the courts of the United States against prizes before made, than by those who were afterwards to seize and bring them in; nor can any reason be given, consistent with the liberal intentions of congress, why the same indulgence should not be extended to the one as to the other. The language of the act extends to all cases where the duties had not actually been paid. There is nothing in the words themselves to show an intended future operation, and it is as reasonable to supply words, to give a retrospective, as a prospective effect. "All goods, &c. captured," must comprehend all those, which had been captured at any time before. The next clause alone indicates something future, and must mean, "which shall be adjudged good and lawful prize." The court will adopt a different construction, when the duties are to be reduced for the benefit of a class of men engaged in a hazardous service, which is supposed to be useful to the public, from what they would, if the duties were to be increased.

2. The right to duties accrues on the arrival of the goods at a port of entry; but goods brought in by the vis major are not "imported" in the legal sense of the word. In such case no right to duties accrues, until an election is made to enter. Until that time, they are not imported. When goods are brought in by one of our own cruisers, for inquiry and adjudication, the interest remains contingent until such adjudication. They may not be subject to condemnation. By the misconduct of the captors they may become the property of the United States. A claimant may appear, who destined them for some other country. Can any right to duties accrue, while the interest is thus suspended? Consider what inconveniences would follow. The collector, twenty-four hours after the arrival of a prize calls upon the captor and compels him to give bond for the duties. Four months afterwards the